May it please the Court, Counsel, my name is Lawrence O'Neill from the Office of the State Appellate Defender and I represent Daryl Sharp in this matter. This appeal is from the first stage dismissal of Mr. Sharp's pro se post-condition petition. Mr. Sharp pled guilty to two counts of armed robbery and a negotiated disposition where he was sentenced to concurrent terms of 20 years in prison. No post plea motion was filed. Mr. Sharp then filed this subject post-condition petition. In this appeal, he argues that the Court erred by dismissing the petition at the first stage because the allegations presented in the petition, taken as true and liberally construed, raised the gist of a constitutional claim that his guilty plea was involuntary and that he received ineffective assistance of trial counsel. This appeal focuses on two of the allegations raised in the pro se petition regarding counsel's ineffective representation, both which meet the low-threshold gist of a constitutional claim standard to survive summary dismissal. First, Mr. Sharp claimed that counsel failed to prepare for trial and that counsel did not investigate an offense or interview two witnesses who could have provided exculpatory testimony. Specifically, Mr. Sharp alleged that he told counsel that he was not involved with the robbery at the Hallmark store, but was passed out in the back seat of the getaway car, drunk and high, while the offender and co-defendant, Corey Ford, entered the store and committed the robbery. Mr. Sharp claimed that he told counsel Ford's name and where he lived, but counsel did not follow up an interview with Ford or seek out the other witness. Further, Mr. Sharp claimed that counsel told him that he did not prepare a defense and instead focused on negotiating a guilty plea with the state. Mr. Sharp provided support for his claims by attaching the affidavit of co-defendant Corey Ford to his post-conviction petition, in which Ford attested that, in cooperating with Mr. Sharp's allegations, Ford's affidavit stated that Mr. Sharp was not involved in the crime, would have been asleep in the rear of the vehicle while the robbery occurred. Because counsel did not investigate or prepare any defense or interview the witnesses, Mr. Sharp had no opportunity to assess his case or evaluate the possible outcome of the trial. Did he not interview any witness that the defendant told him? That is Mr. Sharp's allegation in the petition, Your Honor, that is not rebutted by the record. In the examination of a defense, it's an important consideration in deciding whether to plead guilty. Mr. Sharp claims that had counsel interviewed Ford and prepared a defense, he would not have pled guilty but would have gone to trial on the charges. The case law is strong in favor of Mr. Sharp's claim that allegations that counsel's failure to investigate or prepare a defense and interview witnesses would have left the defendant no choice but to plead guilty raises the gist of a constitutional claim to survive summary dismissal. Thus, these allegations, on this allegation alone, set forth in Mr. Sharp's petition, raises the gist of a constitutional claim that counsel provided ineffective representation by failing to prepare a defense or interview witnesses that left Mr. Joyce guilty plea involuntary or no. Mr. Sharp's second allegation involves counsel's faulty legal advice regarding the possible prison sentence he faced on the armed robbery charge. Mr. Sharp claimed that counsel gave him incorrect legal advice regarding the possible sentence he faced. Mr. Sharp alleges that counsel told him that he was subject to a Class X sentence of 6 to 30 years plus a 15-year add-on sentence for committing a crime with a firearm. Further, Mr. Sharp claimed that the reason he pled guilty was because he relied on counsel's advice that he believed he was facing a 21 to 45-year prison sentence. Mr. Sharp's claims here are supported by four affidavits from family members who attest that Mr. Sharp pled guilty because counsel advised him that he was subject to a 21 to 45 year, that they heard the counsel tell Mr. Sharp that he faced a possible... They gave him 25, right? 20. 20. 20, Your Honor. A non-enhanced Class X sentence of 20 years is what he received. The offense was amended, Your Honor. He was initially charged under the armed robbery, well, armed with a firearm. That was the charge that included the 15-year add-on, but as part of the negotiated plea, the charge was amended to a... In 20. Six to 30. Six to 30. So what was incorrect about it then? On the original charge, Your Honor, he was subject to the add-on. Now, this was in 2010. In 2007, the Illinois Supreme Court of People v. Hochschild invalidated that enhanced sentence, finding that it was disproportionate to the armed violence predicated on robbery. So that was in 2007. So at the time of the offense, at the time of the charge, at the time of the plea, that enhanced sentence was invalid under Hochschild. But Mr. Sharp agreed to plead guilty, believing that he was subject to the enhanced sentence, which at the time was invalid. So he pled to the amended charge, which only had a six to 30-year range. He agreed to 20 years. But the fact was that counsel, the original charge, he was subject to 21 to 45, but that was invalid. So the reason he pled guilty was to avoid the 21 to 45, but it was invalid. So the reason he pled guilty was based upon the faulty legal advice that counsel gave him. 20 years is between the six and 30. Correct, Your Honor. But it's not 45. It wasn't opening himself to the possibility of a minimum 21 on the enhanced sentence to a maximum of 45. And that was the proof to these allegations. And he raises in his post-conviction petition that this was the inducement for him to plead guilty, was the fact that he was facing this 21 to 45-year sentence. And that makes sense, that that would induce him to seek a negotiated disposition. And also, it's not rebutted by the record of the state. So in all, Your Honors, at least this establishes the gist of a constitutional claim, both on the allegation regarding counsel's failure to interpret the charge, it's not rebutted by the record, and it's supported by the co-defendant's affidavit that attests that Mr. Sharp was not involved in the robbery. He was asleep in the backseat. That itself raises the gist of a constitutional claim. And then secondly, the faulty legal advice regarding the possible sentence he was faced, that also, considered at this stage of the proceeding, taking the allegations as true, liberally construed in his favor, not rebutted by the record. One of the witnesses was never even identified, was he? Correct, Your Honor. And does that meet a sufficiency level? Well, we still have Corey Ford's affidavit. I understand that. I'm talking about the one, can we like throw the other one out and just proceed with Mr. Ford? Not at this stage of the proceedings, Your Honor. We are to consider the unnamed? Well, in the context of considering the allegation is that counsel didn't interview witnesses, and Mr. Ford, well, he didn't give him the name of the witness, at least that's not what the petition alleges, but still, the allegation that counsel didn't follow up and seek this witness out, I think you can consider it regarding the broader argument that counsel failed to prepare any kind of a defense. He didn't seek out this witness. That's what the petition alleges. But that's totally unsubstantiated without a name. Yes, but at this stage of the proceeding, I think the more important point is the defendant told his attorney that there was another witness out there, and counsel did nothing to seek this witness out. So at this stage of the proceeding with that allegation of Mr. Sharp and the petition that there's another witness out there, counsel, you need to talk to him, too, and the allegation is that counsel didn't follow up and seek that witness out, I think that favors Mr. Sharp's argument here. In all, again, Your Honor, this is a first-stage post-conviction case. In both of the arguments, both of the allegations raise the gist of a constitutional claim. If circuit court erred in summarily dismissing that petition, I'm going to ask Your Honors to reverse the trial court's summary dismissal order and remand the cause for further post-conviction proceedings. Thank you, counsel. Thank you. Counsel? Good morning, Your Honor. May it please the Court? Mr. O'Neill. I want to start with the 20-45 issue first, so I'll go forward a little bit. A little House child background, I suppose, since there's been discussion here about validity. The House child was decided in 2007. I think that was my case in the 2nd District, so I followed free of interest. After the House child was decided, it was based upon a proportionate penalties problem that existed between the armed violence, well, armed with a handgun, a firearm, and the armed robbery statute. The legislature amended the armed violence statute, and that was in 2008. That was prior to when this case was filed. It did not amend the armed robbery statute. What's resulted from that, of course, is now you'll see a current flare-up of conflicting and heated appellate court opinions deciding whether or not armed violence, excuse me, armed robbery charges with the enhanced penalty are valid in light of the fact of what's been called the revival principle, whether we fix the armed violence statute, fix the armed robbery statute or not. This Court held in a case called People vs. Brown that this revival principle applied and that the armed robbery add-on was valid as of the time that the legislature reenacted the armed violence statute. So at least as the law stood in this state at that time when the defendant pled guilty, there was a 15-year add-on. Now whether that's ultimately going to be the case is going to be decided by the Supreme Court in a case called People vs. Blair. But that's a little bit of historical background, and I think it's important to get that up front because I don't think it's true to say that counsel knew or should have known or had reason to believe that that 15-year add-on was not going to apply as the defendant stood charged with armed robbery while armed with a firearm. Now the defendant's petition, I think most importantly in the affidavit that was attached to the petition by a person by the name of Daneen Shah, who's a relative of the defendant's obviously, was that counsel had told the defendant, look, you're facing 21 to 45 years in prison, which is exactly correct. Six years is going to be the minimum you're going to get for a Class X, 15-year add-on or whatever else you're going to get. That takes you from 21 to 45 years. However, plead guilty to 20, we can work out the deal, which is exactly what happened when the record reflects that the state had filed an amended charge changing it from armed robbery while armed with a firearm to armed with a dangerous weapon, which took it to a regular 6 to 30. Now as I read the defendant's petition, and I'm going by the defendant's petition here, the complaint appears to be that, well, gee, if I had known that I was only looking at 6 to 30, I would never have agreed to the 20-year plea bargain. The problem with that, even here at a first-agent petition, and we talk about here a first-agent or hodge is something that's just indisputable in Maryland, is that that 20-year plea does not exist independent of the plea bargain that was presented to the state as part of the amendment to the charge. In other words, the defendant's argument presupposes that he had a right to a sentence between 6 and 30 years, but he did not. The state was prepared to go to trial on a charge of 21 to 45. So for the defendant to say that somehow he was misadvised or misled by his counsel is patently incorrect. There's no way he'd ever get a 20-year sentence the way the charge was written and the way he was looking at if he had not pled guilty to that amended charge. So based upon how the defendant has alleged this, it's an indisputably meritless argument because there is no such thing as a 6 to 30 that he said, gee, I would have gotten a lot less than that if I had just pled guilty to that. He couldn't plead guilty to that. He got it as part of the deal, and that's the deal that was admonished to him when the court gave him the 6 to 30. It was understood that amending this charge would remove that element that would be part of the mandatory avenue. So I understand that the threshold for first-stage post-conviction petitions is low in light of Hodges. But nonetheless, I think that you can look at his record and look at what happened and look at what the defendant is alleging and look at what the defendant's own affidavit states where the attorney told him, look, the state's got good evidence. You're looking at 21 to 45, but I can get you 20 if you agree to this. And that's exactly what happened. So even the defendant's own witness, I think, really refutes the sort of underlying premise that the defendant has here, which I argue is of itself not of any merit. Now, with reference to the intervening witnesses, when we look at something in the context of an ineffective assistance of counsel, of course, we start with the overarching presumption of the effectiveness of counsel. In other words, it's presuming the counsel's doing what they're doing. Now, I would probably agree. I think we could all agree that in a lot of cases in first-stage petitions, when the defendant's alleging didn't contact his witness, didn't do that, or didn't do another, you're probably going to advance to the second stage. There's a little twist to this, though, because it appears to me that really the few times that you're not going to advance to the first stage is where there's something in a record to rebut the allegation that's being made by the defendant. So in the defendant's petition, and it states here that prior to trial, he informed his attorney that the time the offense is in the backseat of the alleged getaway car, high on marijuana and alcohol, and in fact, one of the perpetrators, Corey Ford, had signed an affidavit and would be willing to testify that Sharp was not involved in the crime and was, in fact, asleep in the backseat. First of all, with regards to the unnamed ones, I disagree with counsel that somehow that's enough to get you past the first stage. Even Hodges has stated that you have to attach affidavits or other things that would support the allegations that you're being made, and if the allegation in this instance is that there's a witness who would have provided a corroborative set of facts to the defense, then it's incumbent upon the defendant certainly to provide an affidavit or at least at a minimum identify who this person was. The record reflects that this person was evidently, according to the defendant, a truck driver who must have been in the vicinity of where the defendant claimed that he was in the backseat and had observed him. How defense counsel is supposed to investigate or determine that is a mystery left unsolved, but certainly that's not enough, I think, to even meet that minimum threshold that the Supreme Court identified in Hodges. Now, Mr. Ford states, Mr. Ford's affidavit, that he was in the backseat the whole time. He doesn't fully corroborate what the defendant says, okay, but he does say he was in the backseat the whole time. Now, let's look at the record. The defendant averves in his petition that he informed his attorney of this defense. He informed his attorney of this claim that Mr. Ford made. And this is a co-defendant. I don't know where he stood in terms of charges or whether he would have even been available to testify. That's all second-stage consideration, okay. I agree with that. However, if you look at the record, if you look at the factual basis provided by the state at the time of the guilty plea, there was, number one, there was a witness that identified the defendant at the scene of the robbery, but, number two, I think maybe more critically, the defendant was observed getting out of the getaway car from the front passenger seat. Who testified to that? That was the state's factual basis, which is not contested by the defendant. But that doesn't mean that at some later time he could have jumped into the front seat after their getting away. Nonetheless, those are the facts that establish the basis for the guilty plea, okay, and that is the record. Just two doors or four? I'm sorry? Two doors or four? Then I don't know. Jumps in the back seat? I don't know. It said the front passenger seat is what the prosecutor stated. I'm assuming that's what they would have done. I mean, that's in agreement with what the state's evidence would have. The point I'm making here, Justice Chatelain, is that this is what defense counsel is looking at as far as the state's quantum of fact is going to be. So if a defendant comes to defense counsel and says, oh, I was in the back seat and passed out the whole time, and you're a trial counsel for the defendant, and you're looking at the interpitch of state's discovery, and it says, here's a witness, and he was observed jumping out of the front passenger seat, certainly it is within the realm of competent counsel to ignore, as the defendant argues here and we'll argue I'm sure on the boat, to that particular aspect of what the defendant wanted as a defense. Defense counsel has the right to pursue whatever strategy that is, and if that strategy is the evidence is overwhelming, which is apparently how the defense attorney had been told the defendant's relative didn't do sharp, then that's certainly within the prerogative of counsel. So this is one of those instances where the record, I think, reflects the gravamen of the ineffective assistance of counsel claim, because there is obviously a set of facts in conflict with the highly dubious set of facts that the defendant is presenting to counsel. Remember, this is a co-defendant. And to say that defendants can never make a claim of ineffective assistance to counsel under those facts would require any hearer of the evidence to basically say that the defense attorney is required in their discretion to abandon their recognition of the quantum of the state's evidence in deference to the defendant's theory or what he claimed to have, and that simply is not the law. So it is not, as far as a first stage petition review goes, it is a meritless, legally meritless claim based upon what the record shows in context of what the defendant's claims were in the petition. This is one of those probably rare circumstances where a claim of failure to investigate or interview simply is just not going to be enough to get even past the just stage. Surely counsel has the prerogative to consider and reject witnesses. But how do you reject a witness if you've never, ever talked to that witness? I'm sure that any defense attorney has their client come in and say, this is what happened to me and this is what the guy is going to tell me. I don't know what else the defense counsel needs on top of that. Obviously, and it hasn't changed even up to this point. I was asleep in the backseat drunk and passed out. Well, first of all, I mean, Ford doesn't even prior adapt to the folks. Ignore Ford and look at what the state's factual cases were. Ford says he was asleep, but he doesn't say he was. He just said he was in the backseat the whole time. Asleep or just in the backseat? I think he just said he was in the backseat. Again, I mean, we could give that. It's not there. We could give that as much liberal construction as you want. I think you still have to look at what the record shows, and you have to say that that is certainly what the defense counsel knew going into this in terms of. And we've got somebody that's ID'd two people. I mean, specifically has ID'd. There was at least one witness that identified the defendant. Yes. I don't know if there's two. But, no, what I'm saying is the witness that ID'd him said there were two defendants or two perpetrators. The defendant said there were two witnesses, if that's what you're getting. No, who was it that ID'd? The co-driver and him. Oh, okay. Yeah. It was an independent witness. Okay, that's what I'm saying. It's like the independent witness, we know ID'd two people. Whether or not he was correct about Sharp being the second one, I guess, is disputable. But we know that the record shows that he ID'd two people. So there would have to be somebody else if it wasn't Sharp, obviously. And he was running, too. Correct. But that was at a later time. I think that's not characterized. And that's at a later time, though, right? Well, that's when the police are going after the car. I assume that they probably will. I'm not going to make assumptions. This is what the state's factual basis was, is there was an eyewitness and that the defendant was observed fleeing by jumping out of the front passenger seat to get in the vehicle. The vehicle the defendant was alleged he was in the backseat sleeping in. The witness doesn't see two people get in the car? Or we don't know that? I've told you everything I know. That's all that I saw on the factual basis. Okay. Thank you very much. Thank you. I appreciate it. First off, Your Honor, regarding the allegation about counsel's failure to prepare a defense and interview witnesses, even without the name or even without any information provided by the second unnamed witness, Corey Ford's affidavit states, it doesn't just state that he was in the backseat of the car, he attested that Mr. Sharp was not involved in the crime but was asleep in the rear of the car. Now, that's Corey Ford, the co-defendant's affidavit. Okay. Can I, and maybe I'm off track here or nitpicky, but the independent witness, was he the victim of the crime apparently or do we know that? I believe so, Your Honor. Did he identify two perpetrators of the crime? I mean, let's just say physical people. All the evidence we have about this is a factual basis. And it's not really fleshed out that accurately. And I can't recall exactly whether the factual basis did indicate that there were two perpetrators. Okay. That answers my question as far as what I wanted to know. Now, I think we need to consider the factual basis and whether that was sufficient at this stage to overcome Mr. Sharp's allegation that he was asleep in the backseat of the car, which was also attested by the co-defendant, Corey Ford, is the fact that, you know, an explanation for why Mr. Sharp did not challenge the factual basis, he wanted this guiltily. So the factual basis is somewhat incomplete regarding any defense that Mr. Sharp could have presented. He was, again, this ties in with the allegation regarding the faulty legal advice that he received from counsel. Mr. Sharp wanted at all costs to avoid exposing himself to a possible 21 to 45-year prison sentence. So even if he did not agree with all the particulars of the factual basis or tried to, you know, add some, you know, have his attorney add some more favorable to the truth, he didn't do that. Why? Because his main concern was to accept this negotiated disposition to the amended offense and not subject him to the enhanced penalty. I think, again, there are questions about Mr. Sharp supposedly jumping in the backseat of the car, which I guess arguably is inconsistent with his allegation that he was asleep in the backseat the whole time. Those are, I think, those are factual questions that should be resolved at the second stage of the proceedings, particularly in light of the allegations that are Mr. Sharp's allegations in the petition that is supported by the co-defendant's affidavit that he was asleep in the backseat the whole time. I think that in itself, Your Honors, is sufficient to advance to the second stage that it sufficiently raised the gist of a constitutional claim. Regarding the enhanced sentence, again, Hochschild was decided in 2007. The amended armed robbery statute did occur in 2008. This offense occurred in 2007. Your Honors did not rule in Brown and revive this, the enhanced armed robbery statute until 2012, just very recently. The point is, at the time of the plea, in the plea negotiations, Mr. Sharp believed that he was subject to the enhanced penalty when Hochschild invalidated that statute at the time. He pled guilty, believing he was subject to it based upon counsel's faulty legal advice. Again, that is sufficient allegation to survive summary dismissal, Your Honors. I ask you to reverse the summary dismissal order and remand this case for further post-condition proceedings. Thank you. Thank you, Your Grace.